## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 07 2016, 6:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Larry D. Stassin
Layer, Tanzillo, Stassin & Babcock
Dyer, Indiana

APPELLEE PRO SE

Deborah E. Marshall
Westerville, Ohio

# IN THE
# COURT OF APPEALS OF INDIANA

Roger F. Florkiewicz,

*Appellant-Petitioner,*

v.

Deborah E. Florkiewicz, n/k/a Deborah E. Marshall,

*Appellee-Respondent.*

April 7, 2016

Court of Appeals Case No.
45A04-1507-DR-1058

Appeal from the Lake Circuit Court

The Honorable Robert Vann, Special Judge

Trial Court Cause No.
45C01-1306-DR-445

**Vaidik, Chief Judge.**

# Case Summary

[1] When Roger Florkiewicz ("Father") and Deborah Florkiewicz ("Mother") divorced, they agreed to each pay a third of their young son's eventual college expenses. Father now contends that his son refuses to have a relationship with him and that he has therefore been relieved of his support obligation under the doctrine of repudiation. After hearing testimony from Father, Mother, and their son, the trial court rejected Father's repudiation claim and found him in contempt for failing to pay as required by the original agreement. Father appeals these rulings, as well as the trial court's calculation of his income for purposes of determining the parties' respective support obligations. In accordance with the substantial deference owed to trial courts in family-law matters, we affirm.

# Facts and Procedural History

[2] Mother and Father married in 1991 and had a son, K.F., in 1994. They divorced in 1996, at which time they entered into a Child Custody and Property Settlement Agreement that provided, in part, "Should the minor child decide to pursue post-secondary education, each party shall provide one-third of the actual expenses incurred for tuition, books, and room & board/housing." Appellant's App. p. 143.

[3] In May 2013, while K.F. was living in Ohio with Mother, finishing high school, and preparing to start college, Mother filed a petition in which she asked the

court to increase Father's share of the expenses.[1] K.F. started college the next month. Then, in February 2014, while Mother's petition to modify was still pending, she filed a separate motion alleging that Father had not paid any of his share under the original agreement and asking the court to find him in contempt. Father eventually paid some, but not all, of what he owed.

[4] At the hearing on Mother's filings, Father asserted that he should not be responsible for any of K.F.'s college expenses or found in contempt because, according to Father, K.F. had repudiated their relationship. K.F. rebutted Father's characterization, testifying that it was Father who distanced himself from K.F. after he learned that K.F. would not be moving to Indiana for his senior year of high school or for college the following year. The trial court also heard extensive evidence regarding Father's response to an instance in which K.F. transferred funds out of a custodial account that Father had established for him. Specifically, Father, without first contacting K.F. to attempt to resolve the matter informally, filed fraud claims with his bank and with the police department. Father did so even though he acknowledges that a significant portion of the funds in the account actually belonged to K.F. K.F. testified that Father's handling of the banking situation further damaged their already-fragile relationship. Notwithstanding this rocky history, K.F. testified that he continues to want a relationship with Father.

---

[1] Because the parties did not include this petition in their appellate appendices, we do not know precisely the relief that Mother sought.

[5] Regarding Father's income, there was evidence presented that Father and his current wife are both employees of a company that Father started and that they now own together; that they determine their own base pay and bonus pay for each year; that Father's bonuses equaled 50% and 25% of his base pay for 2012 and 2013, respectively, while his wife's bonuses equaled 77% and 112% of her base pay for the same years; and that Father owns 81.25% of the company, while his wife owns only 18.75%.

[6] Following the hearing, the trial court issued an order that largely adopted Mother's proposed findings and conclusions. The trial court concluded that K.F. had not repudiated Father and that Father was in contempt for initially failing to contribute to K.F.'s college expenses. Based on the contempt finding, the trial court ordered Father to pay $2000 of Mother's attorney's fees. The trial court also concluded that, for purposes of determining the parties' exact support obligations, a portion of the bonus income of Father's current wife should be included as income of Father, based on their respective roles and ownership interests in the company.

[7] Father now appeals.

# Discussion and Decision

[8] On appeal, Father challenges the trial court's conclusion that K.F. had not repudiated Father, its contempt finding, and its calculation of Father's income. Where, as here, the trial court enters findings of fact and conclusions under

Trial Rule 52(A), we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Kahn v. Baker*, 36 N.E.3d 1103, 1112 (Ind. Ct. App. 2015), *trans. denied*. In doing so, we neither reweigh the evidence nor assess the credibility of witnesses, and we consider only the evidence most favorable to the judgment. *Id.* We will reverse a judgment only if we find it to be clearly erroneous. *Id.* As our Supreme Court just reminded us,

> [T]here is a well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters. Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.

*Steele-Giri v. Steele*, No. 45S04-1512-DR-00682 (Ind. Mar. 15, 2016) (citations and quotations omitted).

# I. Repudiation

Father first contends that the trial court should have relieved him of his obligation to contribute to K.F.'s college expenses under the doctrine of repudiation. Repudiation is a child's complete refusal to participate in a relationship with a parent, and when a child who is eighteen or older does so, the parent must be allowed to dictate what effect this will have on his

contribution to college expenses for that child. *Kahn*, 36 N.E.3d at 1112-13. Whether an adult child has repudiated a parent is a highly fact-sensitive inquiry, and we will overturn a trial court's determination only if it is clearly erroneous. *Id.* at 1113.

[10]     Here, we cannot say that the trial court committed clear error by concluding that K.F. had not repudiated Father. Father acknowledges that we cannot reweigh the evidence that was presented to the trial court, and that we are to "only consider the evidence that is favorable to the trial court's judgment." Appellant's Br. p. 10. Having noted this deferential standard of review, however, Father goes on to cite only evidence that is favorable to *his* position. As we detailed above, the trial court was presented with significant evidence that contradicts Father's claim that K.F. chose to end their relationship. The trial court made numerous findings regarding the hostile manner in which Father responded when K.F. transferred funds out of the custodial bank account, notwithstanding the fact that most, if not all, of the money in the account belonged to K.F. As the trial court noted, K.F. "felt that his relationship with his dad suffered as a result of his dad's reaction[.]" Appellant's App. p. 17. Still, K.F. testified that he hopes to maintain a relationship with Father. K.F. also testified, consistently with that sentiment, that he visited Father in Indiana during his 2012-2013 winter break, that he e-mailed a copy of his senior picture to Father in January 2013, and that he sent birthday cards to his half-sisters (Father's daughters) in 2013.

It is undeniable that after K.F. turned eighteen, his relationship with Father was less-than-ideal. However, there is evidence in the record that supports the trial court's conclusion that K.F.'s behavior after turning eighteen did not constitute "a complete refusal to participate in a relationship" with Father. *See Kahn*, 36 N.E.3d at 1112. Therefore, the trial court did not clearly err when it rejected Father's repudiation defense.

## II. Contempt

Father next argues that the trial court should not have found him in contempt for failing to timely and fully contribute to K.F.'s college expenses. A party that willfully disobeys a lawfully entered court order of which he has notice commits indirect contempt, or civil contempt. *Kahn*, 36 N.E.3d at 1114. Determining whether a party has engaged in contempt lies in the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of that discretion. *Id.*

Father does not deny that he failed to pay his full share of K.F.'s college expenses, but he nonetheless challenges the trial court's contempt finding on two grounds. First, he contends that "[t]here is no evidence in the record that Father refused to pay." Appellant's Br. p. 14. However, he acknowledges that he "did not pay any monies toward room and board expense" and that there is evidence that he "did not pay when requested by Mother by way of email[.]" *Id.* In short, Father concedes that he did not pay everything that he was

required to pay. The claim that he did not "refuse" to pay is simply a matter of semantics.

[14] Alternatively, Father asserts that even if K.F.'s actions did not amount to repudiation, Father believed, in good faith, that they did, and that his failure to pay was therefore excusable. He does not cite any authority in support of this proposition, and we are not aware of any. To the contrary, as Mother notes, we have held that "[u]ncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt." *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997). If Father truly believed that K.F. had repudiated him, he should have asked the trial court to modify the educational-support order, rather than simply not paying.

[15] Under the circumstances, we cannot say that the trial abused its discretion in finding him in contempt.

# III. Father's Income

[16] Father's final argument is that the trial court erred in calculating his income for purposes of determining his support obligation. We cannot agree. The trial court entered more than twenty detailed findings and conclusions supporting its calculation. Most importantly, it found that Father and his current wife are both employees of a company that they now own together but that Father himself started; that they determine their own base pay and bonus pay for each year; and that even though Father owns 81.25% of the company and his wife owns only 18.75%, Father's 2012 and 2013 bonuses equaled only 50% and 25%

of his base pay for those years, while his wife's bonuses for the same years equaled 77% and 112% of her base pay. Based on these findings, the trial court decided that it is appropriate to apportion part of Father's wife's bonus income to Father.

[17] Father does not contest any of the factual findings, nor does he question the trial court's mathematical computations. Rather, he contends that the trial court "arbitrarily decide[d] that the way a corporation pays its officers was inappropriate and adopted another method that the Court found to be more reasonable." Appellant's Br. p. 16. In essence, Father suggests that the trial court was required to accept the income numbers that he presented.

[18] However, courts often have to scrutinize and crunch the dollar figures presented to them when parents are self-employed or are otherwise compensated in non-traditional ways, or when a parent benefits from the income of a subsequent spouse. *See, e.g.,* Ind. Child Support Guideline 3(A)(1) (explaining that income includes, among other things, salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, interest, trust income, annuities, and capital gains). This scrutiny is particularly appropriate where, as here, a parent and his new spouse both work for a company that they own and control. The clear implication of the trial court's apportionment of bonus income is that it had come to the conclusion that Father and his wife were intentionally inflating her income and deflating his. Based on the specific evidence presented to the trial court, we cannot say that its conclusion in this regard was clearly erroneous.

Affirmed.

Bailey, J., and Crone, J., concur.